[Civ. No. 12630.   First Dist., Div. One.   June 26, 1944.]

SAM SMITH et al., Appellants, v. SLEEPY HOLLOW IN-VESTMENT COMPANY (a Corporation), Respondent.

Bartley C. Crum and Philip S. Ehrlich for Appellants.

Lawrence A. Cowen for Respondent.

KNIGHT, J.—The defendant corporation, Sleepy Hollow Investment Co., was engaged in the business of purchasing and selling real property, and had secured an option to purchase, with power to sell, a large tract of land in Marin County belonging to West Coast Life Insurance Company. The plaintiffs, Smith brothers, alleging that on April 6, 1943, defendant entered into a contract with them for the sale to them of 1,100 acres of the tract, brought this action for the specific performance of the alleged contract. The defendant denied that any contract of purchase and sale had ever been entered into between the parties, and the trial court found in defendant's favor on that controlling issue. Accordingly judgment was entered for defendant, and plaintiffs appeal.

The evidence supports the trial court's finding. The following are the facts: Plaintiffs were dairymen, and through a real estate broker named Grandi had been seeking to buy some 1,000 acres of the property. The date fixed for the expiration of defendant's option to purchase the property from the owner was April 30, 1943; and Grandi had submitted a verbal, unauthorized offer on behalf of plaintiffs to purchase 1,100 acres of the tract at $36 an acre, making a total purchase price of $39,600. On April 3d, at a meeting of the directors of the defendant corporation, at which Samuel Gardiner, one of the directors and the attorney for the corporation, was present, Grandi's informal offer was reported to the board by George J. Kaenel, the president of the corporation. At the same meeting the board authorized Kaenel to sell 500 acres of the property to one A. J. Raisch; but his authority to close this deal was limited to 48 hours from and after 5 o'clock April 3, 1943; and the board voted to accept the Smith brothers' offer if the Raisch transaction was not carried through within the limited time. The sale was not made to Raisch, and on April 5, 1943, Kaenel instructed Gardiner to submit to plaintiffs a proposition for the sale to them of the property. That offer was addressed to Grandi, and read as follows:

"April 5, 1943.

"F. Lloyd Grandi:

"Smith Bros. proposal is very nearly satisfactory. We now have a definite authorization from the Board of Directors upon which we can close. I must limit your time to accept to 12 Noon tomorrow, because we are also close to agreement with another party and want to negotiate with him if we do not close with you by tomorrow noon.

"We offer to sell 1085 acres of ranch surrounding Sleepy Hollow Golf course, plus 15 acres off the top of the strip above the driving range, for $39,000.00 net to us, subject to the following:

"1. Right of way to 70 acre flat shall be reasonably and conveniently located, but exact location to be chosen by us, 40' right of way with joint user by ourselves and others.

"2. Flow of water from spring on ranch is reserved for one inch pipe. May be used both in Club House and elsewhere. To be terminated as soon as practicable. Right to maintain dam and storage facilities in meantime.

"3. No right of way to be allowed along roadway past Club House. This tract will be sold or used for residence purposes hence ranch use of that part of road will not be possible.

"4. Portions to be bought by Smith Bros., to be fenced in cattle proof manner within reasonable time. Details to be worked out later.

"SAMUEL W. GARDINER."

The offer as thus submitted by Gardiner was not acceptable to plaintiffs, and the next day, April 6, plaintiffs and Grandi met Gardiner in the latter's office, and after some discussion a counter offer was made by plaintiff. It was reduced to writing by Gardiner, typed in his office, signed by plaintiffs, and is the basis of the present action. It reads as follows (italics ours):

"April 6, 1943.

"Sleepy Hollow Investment Company:

"We hereby offer to buy 1085 acres of ranch surrounding Sleepy Hollow Golf Course plus 15 acres off the top of the strip above the driving range for the *gross* price of $39,000.00 subject to the following:

"(1) We are to have a 40 foot right-of-way from Butterfield Road directly to the 70 acre flat to the north. We understand that this right-of-way will be for the joint use of our-

selves and others and that its exact location is to be chosen by yourselves within a reasonable time.

"(2) *We are to have a right-of-way from Butterfield Road south to the 120 acre tract and this also is to be for the joint use of ourselves and others and the exact location is to be chosen by you within a reasonable time.*

"(3) We understand that we are to have no right-of-way past the Club House along the present used roadway as you are selling that area for residential purposes.

"(4) You are to have the right to use the present spring on the property being sold to us and to impound water at the spring and to take from that, over a reasonable course, a one inch pipe and you are to have the flow which will be required to fill this pipe. However, it is understood that this water right is temporary and is to cease *six months after the cessation of hositilities.* You shall have the right to maintain the dam and the pipeline in the meantime. *It is understood that this is to be used primarily for the Club House and for other domestic purposes. So far as it is used for gardens, only surplus water shall be used.*

"(5) *Boundary lines for fence are to be designated by you from time to time at our request.*

"(6) *Title is to be delivered by you to us within ninety days from date, satisfactory to title company and subject to its issuance of title policy to us without exceptions.*

> "ZEKIE SMITH
> "SAM SMITH".

To the foregoing counteroffer, Gardiner attached and signed the following (italics ours):

"*To the extent of my authority,* I accept the foregoing proposition on behalf of Sleepy Hollow Investment Company. *There are some slight changes in the foregoing memorandum and I will therefore have to get specific authority as to those alterations* but I believe the proposition to be acceptable.

"Dated: April 6, 1943

> "SAMUEL W. GARDINER"

Thereafter the following was added and signed by Grandi:

"I agree to accept as a commission in full on the above transaction, the sum of $600.00.

"Dated, April 6, 1943.

> "F. LLOYD GRANDI."

At the time of the signing of the foregoing instrument plaintiffs gave Gardiner a check for $1,000 as a down payment on the purchase price; and while the instrument was being typed Grandi suggested to Gardiner that he telephone some of the other directors to ascertain whether the changes were satisfactory; and Gardiner attempted to do so. He first called Kaenel and another director, but they were not in; he then talked to another director named Main, who apparently was agreeable, but Gardiner did not discuss the details of the changes with him. Later that day Kaenel met Sam Smith on the street, and congratulated him on buying the property. But on April 8, 1943, defendant's board of directors met and rejected the counter offer of April 6, 1943, and thereafter sold the property to other purchasers.

It will be noted that the conditions above italicized in the Smith brothers' counter offer of April 6th were not contained in the offer submitted by Gardiner on April 5th; and it will be noted also from the italicized portions of the memorandum signed by Gardiner and attached to the Smith brothers' counter offer of April 6th that it was not an unqualified acceptance of the counter offer; but that it was expressly stated therein by Gardiner that his authority to accept the Smith brothers' offer was limited, and that because of the "changes" made therein it would be necessary to obtain "specific authority" from the company. Moreover, Gardiner testified that he told plaintiffs that he only had the express authorization contained in the April 5th letter; that he could not accept plaintiffs' counter offer unqualifiedly on behalf of the corporation on account of the changes therein; that he did not intend to get himself into difficulty and therefore could not accept the proposition unconditionally. His testimony in this regard was contradicted by the plaintiffs; but the conflict was one to be resolved by the trial court. The foregoing evidence obviously supports the trial court's findings that Gardiner's authority to act for the corporation was limited to the terms of the offer submitted by him on April 5th, and that he was not authorized to make a sale under the terms set out in the Smith brothers' counter offer of April 6th; and that Gardiner did not inform plaintiffs that he had the authority to accept the offer made by them on April 6th.

Plaintiffs argue that variances between the Gardiner offer of April 5th and their counter offer of April 6th were matters of mere detail and that therefore, since Gardiner was author-

ized to make the sale under the April 5th offer, he was authorized to accept the counter offer made on April 6th. But a comparison of the two offers will not sustain this view. First, the price is different. The original offer was to sell for a *net* price of $39,000, and the counter offer was to buy for a *gross* price of $39,000, the difference being that in the first, the plaintiffs were to pay the real estate commission, whereas in the second defendant would have to pay it. Then in the April 6th offer, plaintiffs asked for an additional right of way, not provided for in the offer of April 5th. The provision for defendant's use of the water, instead of being terminated "as soon as practicable" was changed to "six months after the cessation of hostilities" and the provision for use of only surplus water for garden purposes was added. And, in the April 5th offer, the property was to be fenced in a cattle proof manner within a reasonable time; but in the April 6th offer it was provided that the boundary lines for the fence were to be designated by defendants, which would involve a survey of the land. And finally, the last provision relating to the delivery · of the title was added. These changes were sufficiently material to support the finding that the Smith brothers' offer of April 6th constituted a counter offer, and since there was not an unqualified acceptance thereof by Gardiner, and it was afterwards rejected by the corporation, there was no meeting of the minds, nor any clear mutual understanding or positive assent on the part of plaintiffs and the corporation which is necessary in order to constitute a binding contract between the parties.

Nor in the state of the evidence can plaintiffs rely upon the doctrine of ostensible authority on the part of Gardiner, for the reason that the qualifying language used by him in the memorandum attached to the Smith brothers' counter offer completely negatives any such theory. Furthermore, the situation is not changed by the fact that the other directors did not deny Gardiner's authority to close the deal, because admittedly those other directors at that time were not fully informed of all the details of the changes made in plaintiffs' proposition; and the evidence shows that Kaenel later strenuously objected for one thing to having to designate where the cattle fences were to be put because it would involve the expense of having a survey made.

The conclusions reached on these controlling issues make it unnecessary to discuss the other points raised by the appellants.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.